UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Action No.:

| | |
|---|---|
| J.O.C. FARMS, L.L.C., </br></br> Plaintiff, </br></br> vs. </br></br> RURAL COMMUNITY INSURANCE AGENCY, INC. d/b/a RURAL COMMUNITY INSURANCE SERVICES; FIREMAN'S FUND INSURANCE COMPANY; WILLIAM J. MURPHY, ADMINISTRATOR FOR THE RISK MANAGEMENT AGENCY, UNITED STATES OF AMERICA; THOMAS JAMES VILSACK, SECRETARY OF AGRICULTURE FOR THE UNITED STATES OF AMERICA; and THE UNITED STATES DEPARTMENT OF AGRICULTURE, RISK MANAGEMENT AGENCY, </br></br> Defendants. | **VERIFIED COMPLAINT** </br> **(Jury Trial Demand)** |

J.O.C. Farms, L.L.C. ("JOC Farms"), by and through its undersigned counsel and pursuant to Rules 3 and 8 of the Federal Rules of Civil Procedure, 5 U.S.C. § 701 *et seq.*, and 7 U.S.C. 1501 *et seq.*, complains as follows of defendants Rural Community Insurance Agency, Inc. d/b/a Rural Community Insurance Services ("RCIS"); Fireman's Fund Insurance Company; Williams J. Murphy, Administrator for The Risk Management Agency, United States of America ("Murphy"), Thomas James Vilsack, Secretary of Agriculture for The United States of America ("Vilsack") and the United States Department of Agriculture, Risk Management Agency ("RMA") (collectively, the "Defendants").

1

## Parties and Jurisdiction

1. Plaintiff JOC Farms is a North Carolina limited liability company with its principal and registered offices located in Pitt County, North Carolina. Joseph D. Briley, Jr. is the company's registered agent and member-manager.

2. Upon information and belief, defendant Rural Community Insurance Agency, Inc. d/b/a Rural Community Insurance Services ("RCIS") is a Minnesota corporation with its principal office located at 3501 Thurston Avenue, Anoka, Anoka County, Minnesota 55303 and is the largest managing general agency for crop insurance in the United States. RCIS is registered and authorized to do business in North Carolina; its North Carolina registered address is 327 Hillsborough Street, Raleigh, Wake County, North Carolina 27601. RCIS also maintains a regional office at 4035 University Parkway, Suite 301, Winston-Salem, North Carolina 27106. Upon further information and belief, RCIS is an affiliate or subsidiary of Wells Fargo Insurance, Inc.

3. Upon information and belief, Defendant Fireman's Fund Insurance Company ("Fireman's Fund") is a California insurance company with its principal office located at 777 San Marin Drive, Novato, California, Marin County, 94998. Fireman's Fund's parent company is Allianz SE, of Munich, Germany, which is among the largest property and casualty insurers and financial services providers in the world. Allianz operates in more than 70 countries with more than 170,000 employees. Allianz purchased Fireman's Fund in 1991. Like RCIS, Fireman's Fund maintains an office at 4035 University Parkway, Suite 301, Winston-Salem, Forsyth County, North Carolina 27106. Upon information and belief, Fireman's Fund is licensed to do business and does

business in North Carolina and its statutory agent for service of process is the North Carolina Commissioner of Insurance.

4. Defendant Thomas James Vilsack is the duly appointed and serving Secretary of United States Department of Agriculture ("USDA").

5. Defendant William J. Murphy is the Manager and Chief Executive Officer for the Federal Crop Insurance Corporation 7 U.S.C. § 1505(d), and the Administrator of the Risk Management Agency ("RMA") of the United States Department of Agriculture. RMA operates and manages the Federal Crop Insurance Corporation ("FCIC"). As the Administrator of RMA, Mr. Murphy serves as the manager of the FCIC's Board of Directors.

6. RMA was established pursuant to the Federal Agriculture Improvement and Reform Act of 1996 ("Freedom to Farm Act"), P.L. 104-127, approved April 4, 1996. It is an independent office within the United States Department of Agriculture responsible for the supervision of the Federal Crop Insurance Act. (*See* 7 U.S.C. §§ 1501 *et seq*.).

7. RMA's Regional Office serving North Carolina is located at 4405 Bland Road, Raleigh, Wake County, North Carolina 27609.

8. The United States of America and the USDA through its right to contract with the private citizens have waived sovereign immunity as a defense to the contract entered into by the parties and specifically waived its rights of sovereign immunity in the insurance contracts at issue.

9. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1332, and 1346 because:

a. the matter involves federal questions;

b. there is complete diversity of citizenship between the plaintiff and the defendants and the amount in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000; and

c. Agencies and officers of The United States are defendants.

10. This Court has supplemental jurisdiction over JOC Farms' state law claims pursuant to 28 U.S.C. § 1367.

11. This Court has personal jurisdiction over the defendants, and venue is proper in the Eastern District of North Carolina pursuant to 28 U.S.C. § 1391 because the events giving rise to plaintiff's claims occurred within this district. Further, this action arises under the Federal Crop Insurance Act, 7 U.S.C. §§ 1501 *et seq.*

12. JOC Farms' cause of action against the United States, its representatives and agencies is created by the judicial review provisions of the Administrative Procedures Act, 5 U.S.C. §§ 702-706.

13. JOC Farms' claims are grounded in the defendants' failure to comply with and properly administer two Multi-Peril Crop Insurance policies issued to JOC Farms in 2009, NC-090-793527, which insured crops planted by the plaintiff in Beaufort County, North Carolina, and NC-090-793528, which insured the plaintiff's crops planted in Pitt County, North Carolina ("the Policies"). The Polices were underwritten by Fireman's Fund, reinsured by the USDA through the FCIC, issued by RCIS in its capacity as Fireman Fund's managing general agent, and placed through RCIS's agent Dwain Woolard d/b/a Wollard Insurance Agency, Inc. As more specifically alleged below, the defendants have failed and refused to timely or properly process, adjudicate and pay the

4

plaintiff's claims for damage and loss to its 2009 flue-cured tobacco crop totaling more than $1.5 million and have prevented the plaintiff from planting any flue-cured tobacco in 2010, 2011 and 2012.

14. To date, JOC Farms has complied with all terms and conditions of the Policies. By contrast, defendants have failed to comply with the Federal Crop Insurance Act, 7 U.S.C. §§ 1501 *et seq.*, applicable Federal Regulations, and RMA's Large Claim Procedures, including but not limited to Bulletin Nos. MGR-05-009, MGR-05-009.1 and Information Memorandum IS-07-010 and North Carolina law.

15. JOC Farms' pursuit of further administrative or extra-judicial processes and remedies specified by the Policies or regulations would be an exercise in futility and delay because the defendants have plainly and unequivocally indicated, through their actions and inactions and through their communications with the plaintiff and its attorneys that they will not reasonably indemnify JOC Farms for its tobacco crop losses suffered in 2009. Moreover, a prompt resolution of the plaintiff's claims is of the essence because the defendants' unwarranted and duplicitous failure and refusal to timely process and pay its 2009 claims has placed the plaintiff in dire financial straits. Owing to the defendants' actions and inactions JOC Farms is unable to pay its obligations for loans, interest on loans, seed, fertilizer, equipment and other obligations arising out of and in connection with its 2009 crops and was prevented from planting tobacco crops in 2010, 2011 and 2012.

## Factual Allegations Pertinent to All Claims

16. JOC Farms operates tobacco farms and other farming operations in Pitt and Beaufort Counties in North Carolina. In 2009, JOC planted more than 5,100 acres

5

of crops in Beaufort and Pitt Counties. Among its 2009 crops, JOC Farms planted 602.61 acres of flue-cured tobacco in Beaufort County and 194 acres of tobacco in Pitt County.

17. In 2009, JOC Farms purchased the Policies through Dwain R. Woolard of the Woolard Insurance Agency in Bath, Beaufort County, North Carolina. JOC Farms assigned its indemnity under the Policies to AgCarolina Financial, its agricultural lender.

18. Multi-peril crop insurance policies for tobacco crops provide harvest yield guaranties to policyholders based on a projected number of pounds of harvested tobacco multiplied by a set price per pound.

19. Policy NC-090-793528 ("the Pitt County Policy") provided JOC Farms with a tobacco crop yield guaranty of 345,277 pounds at $1.85 per pound, or $638,762.45. These figures all yield estimates were based on actuarial yield data from the federal Farm Services Agency ("FSA"). Policy NC-090-793528 ("the Beaufort County Policy") provided a tobacco yield guaranty of 1,024,573 pounds or $1,895,461.00. Thus, the total of the tobacco yield guaranties under the Policies was 1,401,773 pounds or $2,593,290. The expected harvest (FSA yield estimate) for JOC Farms' 2009 total tobacco crop was 1,597,746 pounds, which at a market price of $1.85 per pound was projected to produce $2,955,830.10 in gross revenue. For its coverage, JOC Farms paid $64,154.00 in premiums for the 2009 crop year.

20. The overwhelming majority of flue-cured tobacco crops planted in Pitt and Beaufort Counties in 2009, including the plaintiff's, were impaired in quality and diminished in quantity by adverse weather and naturally occurring disease.

6

21. The damages and losses to JOC Farms' 2009 flue-cured tobacco crop were caused by adverse weather and disease that were beyond the control of the plaintiff.

22. JOC Farms took all reasonable steps within its control to limit the damage and loss to its 2009 flue-cured tobacco crop.

23. JOC Farms harvested and sold all tobacco from its 2009 crop that was capable of being harvested and sold.

24. In compliance with the terms of the Policies, JOC Farms reported its expectation of yield losses owing to disease and adverse growing conditions in early September, 2009.

25. Upon information and belief, RMA's Raleigh Regional Office notified RCIS of its election to participate in the loss determination for JOC Farms' Beaufort County loss on September 3, 2009. Thereafter RCIS notified JOC Farms of RMA's participation in the Beaufort County claim.

26. From September 11 through November 2009 RCIS and RMA represented to JOC Farms that they were jointly investigating and assessing JOC Farms' Beaufort and Pitt County losses. Records indicate that they made at least six (6) field visits to JOC Farms' fields.

27. In conjunction with the adjustment of the claims, Mr. Briley and JOC Farms were directed by RCIS and RMA to salvage as much of the tobacco crop as possible. Between July 22, 2009, and the end of the harvest on October 1, 2009, JOC Farms harvested, cured and sold 958,469 pounds of tobacco. JOC Farms sold 61,933 pounds of tobacco from Pitt County and 341,149 pounds of tobacco from Beaufort

7

County (more than 40% of its harvested crop) as "pickings" at a price of $.30 per pound, which was substantially less than the cost of harvesting it.

28. Despite its efforts, JOC Farms sustained substantial losses to its 2009 flue-cured tobacco crop. In Pitt County, JOC Farms' total revenue from tobacco sales was $183,349 -- $455,413.00 less than the Pitt County Policy's guaranty of $638,762.45. In Beaufort County, JOC Farms realized only $795,533 in tobacco sales -- $1,135,993 less than the $1,931,526 yield guaranty provided by the Beaufort County Policy. Thus JOC Farms' total insured loss under the Policies was $1,591,406.

29. On March 1, 2010, representatives of RCIS and RMA met with JOC Farms. RCIS informed JOC Farms that it had calculated the indemnity payment for the Pitt County claim at approximately $63,000 and RMA determined that there was no payable loss on JOC Farms' Beaufort County claim. RCIS' and RMA's representatives told JOC Farms that both claims were being denied owing to alleged (a) lack of timely harvesting; (b) failure to take appropriate and proper steps to prevent disease; and (c) lack of sufficient curing barn capacity in relation to the size of JOC Farms' acreage. Neither RCIS nor RMA provided any documentation of their contentions to JOC Farms. Further, both refused to explain the six month delay in assessing the JOC Farms' Pitt and Beaufort County claims.

30. On or about March 24, 2010, RCIS issued JOC Farms an indemnity payment of $62,462 for the Pitt County claim.

31. On April 15, 2010, -- a month and half after telling JOC Farms' representatives that it was going to deny its claim -- RMA issued its "final decision" letter denying JOC Farms' Beaufort County claim on April 15, 2010.

8

32. On May 13, 2010, JOC Farms requested review and mediation of its Beaufort County claim.

33. On May 26, 2010, RMA notified JOC Farms that administrative review of its Beaufort County claim would be held in abeyance pending the outcome of mediation.

34. On May 28 and June 17, 2010, mediation sessions were held with respect to JOC Farms' Beaufort county claim.

35. On June 30, 2010, RMA issue a revised "final decision" letter wherein in withdrew its contention that JOC Farms lacked sufficient curing barn capacity but denied its Beaufort County claim on the contended grounds of: (a) lack of timely harvest and (b) failure to purchase and apply proper fungicides.

36. On July 30, 2010, JOC Farms requested administrative review of RMA's adverse decision.

37. On February 9, 2011, RMA's Deputy Administrator for Insurance Services issues its administrative review decision, ruling that JOC Farms used sufficient disease control measures for management of tomato spotted wilt virus and tobacco mosaic virus, but did not take proper steps to prevent or treat Black Shank disease. RMA agreed with JOC Farms that barn capacity was not a factor that contributed to its loss but contended that losses attributed to JOC Farms' harvest strategy were not insurable losses caused by naturally occurring events.

38. On March 14, 2010, JOC Farms completed its request for an appeal RMA's adverse decision. The matter was assigned to Hearing Officer Glenna J. Sheveland of the USDA's National Appeals Division, a sister agency to RMA.

39. In-person hearings were held on April 14 and May 5, 2011 and a telephone hearing was held May 24, 2011. Representatives of RMA and RCIS attended every hearing either in person or by telephone. Hearing Officer Sheveland also permitted the parties to submit post-hearing documentation and written closing statements. She closed the record on June 13, 2011.

40. On July 13, 2011, JOC Farms' received Hearing Officer Sheveland's Appeal Determination of JOC Farms' appeal of RMA's adverse decision. A true and accurate copy of her Appeal Determination is attached as Exhibit A. Among other things, Ms. Sheveland determined that RMA did not have authority to calculate indemnity payments and that it was RCIS' obligation to make all calculations regarding payments owed to persons and entities insured under its policies, including JOC Farms.

41. On July 21, 2011, JOC Farms' counsel wrote to counsel for RCIS requesting payment of the undisputed portions of indemnity payments owed to JOC Farms in connection with its Beaufort County claim. A trued and accurate copy of that letter is attached as Exhibit B.

42. On August 12, 2011, JOC Farms made its request for Director Review regarding its Beaufort County claim as required under the USDA National Appeals Divisions Rules. RMA provided its response to JOC Farms' request for Director Review on or about August 22, 2011.

43. The USDA's rules mandate that when an insured requests review of a hearing officer's decision, the Director "will" complete the review and either issue a final determination or remand the determination "not later than 30 business days after

receipt of the request for review." Nevertheless, JOC Farms heard nothing from the Director for more than eight (8) months.

44. In the meantime, counsel for RCIS and JOC Farms exchanged correspondence and communications regarding RCIS' failure to make additional indemnity payments on JOC Farms' Beaufort County claim. True and accurate copies of those communications are attached as Exhibits C, D, E, F, G and H. To date RCIS has refused to make further payments to JOC Farms on its Beaufort County claim.

45. On or about May 10, 2012, JOC Farms received the Director's review upholding Hearing Officer Sheveland's July 11, 2010, Appeal Determination. True and accurate copies of the transmittal letter delivering the Director's Review determination and the determination itself are attached as Exhibits I and J.

## FIRST CLAIM FOR RELIEF
**(Judicial Review: RMA, Murphy, Vilsack)**

46. Paragraphs 1 through 45 are realleged and incorporated by reference.

47. JOC Farms is entitled to judicial review of the proceedings described above.

48. In reviewing this matter, JOC Farms respectfully requests that the Court:

   a. compel agency action unlawfully withheld or unreasonably delayed; and

   b. declare unlawful and vacate all agency actions, findings, and conclusions found to be:

      i. arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

    ii. contrary to constitutional right, power, privilege, or immunity;

    iii. in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

    iv. without observance of procedure required by law;

    v. unsupported by substantial evidence in a case subject to sections 5 U.S.C. §§ 556 and 557 or otherwise reviewed on the record of an agency hearing provided by statute; or

    vi. unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

49. The plaintiff requests that the court order other such relief as is just and proper.

## SECOND CLAIM FOR RELIEF
### (Breach of contract: Against all defendants)

50. Paragraphs 1 through 49 are realleged and incorporated by reference.

51. RMA regulations classify any multi-peril crop insurance claim where the production loss or indemnity is likely to exceed $500,000 as a "large claim." RMA regulations further require the insurance provider (here, RCIS) to notify RMA of each such claim, whereupon RMA may elect to participate in the loss determinations and/or review the provider's actions with respect to the claim prior to its settlement and payment.

52. Pursuant to the regulations described above, RMA classified the plaintiff's claim pursuant to the Beaufort County Policy as a large claim and elected to participate in the loss determination.

12

Case 4:12-cv-00186-D   Document 1   Filed 08/09/12   Page 12 of 19

53. RCIS has paid JOC Farms an indemnity of $388,169 and $1,279 in premium refunds on its claim pursuant to the Pitt County Policy. RCIS refuses to pay any additional indemnity on the Pitt County claim.

54. RCIS has paid JOC Farms an indemnity of $100,907 and $4,523 in premium refunds on its claim pursuant to the Beaufort County Policy. RCIS refuses to pay any additional indemnity on the Beaufort County claim.

55. Plaintiff is informed and believes that RCIS and RMA have acted and are continuing to act in concert, and with each other's express approval and cooperation, with respect to the handling, determination and denial of plaintiff's claims.

56. By refusing to consider or pay plaintiff's claims for the damage and loss to its 2009 tobacco crops as alleged above, defendants have breached both of the Policies.

57. As a result of defendants' breaches of their insurance contracts, the plaintiff has been damaged in an amount greater than $75,000.

### THIRD CLAIM FOR RELIEF
### (Bad faith refusal to settle against RCIS and Fireman's Fund)

58. Paragraphs 1 through 57 are realleged and incorporated by reference.

59. RCIS and Fireman's Fund know, or in the exercise of good faith should know, that the plaintiff's claims as alleged above are valid and payable; nevertheless, these defendants have willfully failed and refused to timely and properly process, settle or pay them. These defendants, along with RMA, unreasonably delayed and prolonged the investigation and processing of the plaintiff's claims and failed to provide the plaintiff with any information concerning the status of its claims between early November, 2009 and March 1, 2010 when they knew, or should have known, that such

13

Case 4:12-cv-00186-D   Document 1   Filed 08/09/12   Page 13 of 19

inordinate and unjustified delay would place the plaintiff under financial duress by, among other things, effectively preventing the plaintiff from making and informed and timely decision concerning whether to plant a 2010 flue-cured tobacco crop. Plaintiff is informed and believes that the foregoing actions and inactions on the part of RCIS and Fireman's Fund where done in concert with RMA and with RMA's knowledge, approval and cooperation.

60. RCIS's and Fireman Fund's willful failure and refusal to timely or properly process, settle or pay plaintiff's valid claims as required by the Policies constitutes bad faith and oppressive and outrageous conduct; consequently, the plaintiff is entitled to punitive damages of at least $75,000.

## FOURTH CLAIM FOR RELIEF
**(Unfair and deceptive trade practices against RCIS and Fireman's Fund)**

61. Paragraphs 1 through 60 are realleged and incorporated by reference.

62. At all relevant times, RCIS and Fireman's Fund were engaged in commerce in the State of North Carolina.

63. RCIS's and Fireman Fund's actions as described above were in or affecting commerce as defined in N.C. GEN. STAT. §§ 75-1.1 AND 58-63, and constitute unfair and deceptive trade practices in violation of North Carolina law.

64. RCIS's and Fireman Fund's unfair and deceptive trade practices have damaged the plaintiffs in an amount in excess of $75,000. The plaintiff is entitled to recover such damages and, pursuant to N.C. GEN. STAT. § 75-16, to have its damages trebled and to recover its reasonable attorneys' fees.

14

## FIFTH CLAIM FOR RELIEF
### (Unfair claim settlement practices against RCIS and Fireman's Fund)

65. Paragraphs 1 through 64 are realleged and incorporated by reference.

66. RCIS and Fireman's Fund have refused to pay plaintiff's claims without conducting a reasonable investigation based upon all the available information in violation of N.C. GEN. STAT. §§ 58-63-10, 58-63-15(11). This failure to investigate has occurred with such frequency and repetition as to constitute a general business practice.

67. RCIS and Fireman's Fund have failed to attempt, in good faith, to effectuate prompt, fair and equitable settlements of claims in which liability has become clear. This failure has occurred with such frequency and repetition as to constitute a general business practice.

68. RCIS and Fireman's Fund have forced the plaintiffs to instigate this action to recover amounts due under the Policies by refusing to offer any timely or reasonable settlement, and have forced other of their insureds to instigate suits to recover amounts due them under their crop insurance policies by refusing to offer any settlement. This refusal has occurred with such frequency and repetition as to constitute a general business practice.

69. As a result of RCIS's unfair settlement practices, plaintiff has been damaged in an amount in excess of $75,000.00 pursuant to N.C. GEN. STAT. §§ 58-63-10 and 58-63-15, and is entitled to treble damages.

## SIXTH CLAIM FOR RELIEF
### (Fraud on the part of RCIS.)

70. Paragraphs 1 through 69 are realleged and incorporated by reference.

15

71. Defendant RCIS represented to the plaintiff that it "delivers premier service on every claim;" that its claims processing is unusually and exceptionally quick and easy; that its claims processing utilizes advanced technology; that its adjusters and other claims personnel are skilled, competent, experienced and thoroughly familiar with the crops planted and insured by the plaintiff; and that in the event of a loss it would provide the plaintiff with "superior service" on any claims presented by the plaintiff.

72. RCIS made the foregoing representations concerning its claims service for the purpose of attracting plaintiff and other customers to its crop insurance business and with the intention that the plaintiff and other farmers would rely on them in choosing the provider for their 2009 crop insurance policies. The plaintiff, a large-scale farmer for whom prompt and efficient claims handling was and is particularly important, relied on RCIS's representations to its detriment.

73. RCIS made the foregoing representations knowing, or when it should have known, that they were materially false.

74. As the result of having relied on RCIS' materially false and deceptive representations concerning its claims handling the plaintiff suffered damages in excess of $75,000.

WHEREFORE, the plaintiff prays:

1. That the Court order Murphy, Vilsack and RMA to produce all of their files, records and information related to JOC Farms' claims on the Policies and conduct appropriate judicial review of the proceedings to date;

2. That it have and recover of defendants all damages and losses due and payable pursuant to the terms of the Policies, plus interest calculated at the legal rate

16

from the date of loss for breach of contract;

2.  That it have and recover of defendants RCIS and Fireman's Fund punitive damages in such amount as the jury, in the exercise of its sound discretion, shall determine;

3.  That it have and recover of defendants RCIS and Fireman's Fund its actual damages by reason of the defendants' unfair and deceptive trade practices and/or unfair claim settlement practices;

4.  As an alternative to the recovery of punitive damages, that the damages awarded to the plaintiff be trebled pursuant to N.C. GEN. STAT. § 75-16 and/or N.C. GEN. STAT. §§ 58-63-10, 58-63-15(11);

5.  That it have and recover its reasonable attorney fees pursuant to N.C. GEN. STAT. § 75-16.1;

6.  That, to the fullest extent permitted by law, the defendants be held jointly and severally liable to JOC Farms for all of its damages;

7.  That the costs of this action be taxed against the defendants; and

8.  For such other and further relief as this court shall deem just and proper.

### DEMAND FOR JURY TRIAL

The plaintiff hereby demands a trial by jury on all issues so triable.

This the 9th day of August, 2012.

        **STEVENS MARTIN VAUGHN & TADYCH, PLLC**

        /s/ Michael J. Tadych
        Hugh Stevens
        N.C. State Bar No. 4158
        Michael J. Tadych
        N.C. State Bar No. 24556
        1101 Haynes Street, Suite 100
        Raleigh, NC 27604-1455
        Telephone: (919) 582-2300
        Facsimile: (866) 593-7695
        *Attorneys for Plaintiff*

## Verification

Joseph D. Briley, Jr., first being duly sworn, says that he is the member-manager of plaintiff J.O.C. Farms, L.L.C., that he has read the Complaint and that he verifies, based on his own knowledge, the truth of the factual allegations stated in the Complaint, and upon a good faith belief those allegations in the Complaint stated upon information and belief.

This the 9th day of August, 2012.

_____
Joseph D. Briley, Jr.

STATE OF NORTH CAROLINA
COUNTY OF Wake

Sworn to and subscribed before me this the 9th day of August, 2012

_____
Notary Public
Patricia A. Pritchard

(SEAL)

My Commission Expires: 9/5/16