

UNITED STATES DEPARTMENT OF AGRICULTURE
OFFICE OF THE SECRETARY
NATIONAL APPEALS DIVISION

# DIRECTOR REVIEW DETERMINATION

| | |
|---|---|
| In the Matter of | ) |
| | ) |
| JOC FARMS, LLC | ) |
| | ) Case No. 2011S000349 |
| and | ) |
| | ) |
| RISK MANAGEMENT AGENCY | ) |

On August 12, 2011, JOC Farms, LLC (Appellant) filed a request for Director review of a National Appeals Division (NAD) Hearing Officer Appeal Determination issued on July 11, 2011. In her determination, the Hearing Officer upheld a Risk Management Agency (RMA) adverse decision, dated February 9, 2011. In the adverse decision, RMA determined that production loss of Appellant's 2009 tobacco crop resulted from uninsurable causes of loss.

I uphold the Hearing Officer's determination as I find on review that it is supported by substantial evidence in the record. As discussed below, I find that the adverse decision is consistent with applicable laws and regulations. In arriving at this decision, I have reviewed the case record, including the Hearing Officer's determination; the hearing testimony; Appellant's request for review; and RMA's response thereto. In reviewing the factual circumstances in this case, I incorporate by reference the Hearing Officer's findings of fact. File 1, Tab 7.

I

Appellant began harvesting tobacco during the first week of July 2009 when precipitation interrupted the harvesting. Appellant began harvesting in another county where it could harvest a more desirable crop. During the interim, fields in Appellant's county were dry enough to harvest, but Appellant declined to do so because of the expense and time necessary to move harvesting equipment. Hearing Audio at Track 1C, 2:27-2:40, 19:21-21:38, and 39:07-39:19. While Appellant harvested elsewhere, the tobacco crop withered. Hearing Audio at Track 2B, 2:25:35-2:25:52.

On September 1, 2009, Appellant filed a notice of loss. Appellant claimed tobacco crop loss resulted from plant disease. File 3, Tab 15, Agency Record, Page 41; File 4, Tab 15, Agency Record, Pages 229-232; Hearing Audio at Track 2B, 2:29:15-2:29:23. Subsequently, representatives of RMA and Appellant's insurance provider visited Farm Serial Number (FSN) 7718, 7877, 9172, 8245, 8251, 8854, 8861, 9166, 9167, 9173, 9325, 9326, and 9327 on September 11, 14, 15, 22, and 23, and October 23, 2009. They observed unharvested, mature tobacco leaves ready for harvest that were burning up in

3101 Park Center Drive, Suite 1100
Alexandria, Virginia 22302
www.nad.usda.gov

An Equal Opportunity Employer

EXHIBIT J

the fields. File 3, Tab 15, Agency Record, Pages 20-27: Hearing Audio at Track 2B, 2:28:14-2:29:12.

During the September 11, 2009, field visit, the insurance provider found discrepancies in Appellant's reported acreage. File 3, Tab 15, Agency Record, Page 21; Hearing Audio at Track 2B, 2:27:20-2:28:13. On September 22-23, 2009, the insurance provider remeasured Appellant's acreage. File 3, Tab 15, Agency Record, Pages 25-26. The insurance provider found numerous errors with Appellant's acreage report and that Appellant had over reported 16.61 acres. File 3, Tab 15, Agency Record, Pages 28-29.

An analysis of plant tissue performed on October 14, 2009, confirmed the presence of tomato mosaic virus in one of the samples from Appellant's farm. Other samples were very senescent and exhibited lesions of brown spot. File 3, Tab 15, Agency Record, Page 14. This evidence was not deemed reliable because samples were comingled from two counties. File 2, Tab 18, Agency Exhibit 3, Page 4. A second analysis of plant tissue was performed on October 26, 2009. File 4, Tab 15, Agency Record, Page 294. Samples were taken from FSN 8856, Tract 41336; FSN 9712, Tracts 629 and 639; FSN 8854, Tract 41334; FSN 8854, Track 41335; FSN 8856, Track 41336; FSN 8251, Tract 1132; FSN 8857, Tract 612; FSN 8856, Tract 4467; FSN 8861, Tract 606; FSN 7284, Tract 609; FSN 7718, Tract 41281; FSN 9325, Tract 41637; FSN 9326, Tract 41638; FSN 9137, Tract 837; FSN 9327, Tract 41639; FSN 8861, Tract 607; FSN 8245, Tract 303; and FSN 9166, Tract 541. File 2, Tab 18, Agency Exhibit 3, Page 4. Granville wilt was confirmed in two samples, one from Tract 303 of FSN 8245 and one from Tract 541 of FSN 9166. File 4, Tab 15, Agency Record, Page 294.

On February 9, 2011, RMA issued an adverse decision. In the adverse decision, RMA determined that production loss of Appellant's 2009 tobacco crop resulted from uninsurable causes of loss. File 1, Tab 1.

In response, Appellant appealed to NAD. On April 14, May 5, and May 24, 2011, a NAD Hearing Officer convened an evidentiary hearing. File 2, Tab 20. The Hearing Officer closed the record on June 13, 2011. Thereafter in a written determination issued on July 11, 2011, the Hearing Officer concluded that Appellant's failure to harvest its tobacco crop caused the crop loss. File 1, Tab 7. Appellant responded to the Hearing Officer's determination by filing this timely request for Director review. File 1, Tab 8. RMA filed a response to Appellants' Director review request. File 1, Tab 9.

## II

The Federal Crop Insurance Act, 7 U.S.C. §1501 *et seq.*, authorizes the Federal Crop Insurance Corporation (FCIC) to issue regulations to implement the Act. *See* 7 U.S.C. §1506(o). FCIC implements the Act by establishing a Group Risk Plan Common Policy, codified in 7 C.F.R. § 407.9; File 5, Tab 15, Agency Record, Pages 392-421. The Group Risk Plan Common Policy provides insurance against unavoidable losses from specific causes referenced in the Crop Provisions. 7 C.F.R. § 407.9, Section 12; File 5, Tab 15,

Agency Record, Page 405. In accordance with Section 10 of the Crop Provisions, insurance is provided only against adverse weather conditions, fire, insects, plant disease, wildlife, earthquake, volcanic eruption, or failure of irrigation water supply. File 5, Tab 15, Agency Record, Page 424.

The Group Risk Plan Common Policy authorizes the use of handbooks, manuals, memoranda, and bulletins issued by FCIC and published on RMA's website to administer the policy. File 5, Tab 15, Agency Record, Page 392. RMA's Loss Adjustment Manual directs the insurance provider to remeasure acreage if it has reason to question the accuracy of the measurement or if it does not agree with the previously measured acres. *See* Loss Adjustment Manual (LAM) Standards Handbook 2009 and Succeeding Crop Years, Part 3, Section 3, Paras. 80D(2) and 80F(5), Pages 186 and 188, available at http://www.rma.usda.gov/handbooks/25000/2009/09_25010.pdf. Under such circumstances, the insurance provider will prepare a revised acreage report. *See* Loss Adjustment Manual, Part 2, Section 3, Para. 29F, Page 64.

### III

On Director review, Appellant argues that the Hearing Officer erred when finding that Appellant's tobacco crop losses were not attributable to insurable causes of loss. Appellant contends that its crop loss was attributable to excessive rainfall and plant disease, both of which are insurable causes of loss.

I am not persuaded by Appellant's argument. According to the record, Appellant began harvesting tobacco during the first week of July 2009 when precipitation interrupted the harvesting. Appellant began harvesting in another county where it could harvest a more desirable crop. During that time, Appellant acknowledged that fields in the county were dry enough to harvest but Appellant declined to do so because of the expense and time necessary to move the equipment. While Appellant harvested elsewhere, the tobacco crop withered.

Appellant filed a notice of loss on September 1, 2009. Appellant claimed the loss resulted from plant disease. Representatives of RMA and Appellant's insurance provider subsequently visited Appellant's farm on September 11, 14, 15, 22, and 23, and October 23, 2009. They observed unharvested, mature tobacco leaves ready for harvest that were burning up.

An analysis of plant tissue performed on October 14, 2009, confirmed the presence of tomato mosaic virus in one of the samples from Appellant's farm. Other samples were very old and exhibited lesions of brown spot. This evidence, however, was not deemed reliable because samples were comingled from two counties. A second analysis of plant tissue was performed on October 26, 2009. Granville wilt was confirmed in two samples. The presence of Granville wilt in only two samples out of the numerous samples tested did not confirm that Appellant's crop loss was due to plant disease. Rather, the loss of

JOC Farms, LLC
Case No. 2011S000349

Appellant's tobacco crop was attributable to senescence; the tobacco was not harvested timely. *See* Hearing Audio at Track 2A, 2:15:32-2:21:32. This evidence supports the Hearing Officer's finding that Appellant's failure to harvest the tobacco timely resulted in crop loss.

Regulations provide insurance against unavoidable losses from specific causes, namely adverse weather conditions, fire, insects, plant disease, wildlife, earthquake, volcanic eruption, or failure of irrigation water supply. *See* 7 C.F.R. § 407.9, Section 12; Crop Provisions, Section 10. Untimely harvesting is not an insurable cause of loss. Thus, I find no error with RMA's decision that determined Appellant's 2009 tobacco crop production loss was a result of an uninsurable cause of loss.

In reaching my decision, I have considered Appellant's argument that its tobacco crop losses were attributable to adverse weather, but I am not persuaded by this argument. Weather data did not indicate excessive rain for the county in July 2009. During two days in July, the county received an inch or more of rain. File 1, Tab 7, Hearing Officer's 21st Finding of Fact. As stated above, Appellant's harvest of tobacco began during the first week of July 2009 when precipitation interrupted the harvesting. Appellant subsequently moved its harvesting operation to another county to harvest a more desirable crop. During that time, Appellant acknowledged that fields in the county were dry enough to harvest, but Appellant declined to do so because of the expense and time necessary to move the harvesting equipment. While Appellant harvested elsewhere, the tobacco crop withered. This evidence demonstrates that Appellant's crop loss was attributable to untimely harvesting of the tobacco crop, not to adverse weather.

It is Appellant's burden to prove by a preponderance of the evidence that the agency's adverse decision was erroneous. *See* 7 C.F.R. § 11.8(e). This, Appellant has failed to do. While Appellant in its request for Director review may disagree with the Hearing Officer's finding of fact, mere disagreement does not form a basis for reversal; an appellant must show that the record contradicts a finding, and in this case, Appellant has not shown such a contradiction.

Finally, Appellant argues that its insurance provider improperly remeasured its farm acreage. Appellant does not dispute that it did not report two fields as those fields were reported in another county. Rather, Appellant contends it was not proper to remeasure its reported fields, the measurements of which were not in doubt. Appellant contends that RMA authorized the remeasurement of Appellant's farm acreage only to reduce its indemnity exposure.

I am not persuaded by Appellant's argument. The insurance provider found discrepancies in Appellant's reported acreage during a field visit on September 11, 2009. Subsequently, the insurance provider remeasured Appellant's acreage and found numerous errors with Appellant's reported acreage. The insurance provider then prepared a revised acreage report for Appellant's indemnity claim. I find no error with the insurance provider's

preparation of a revised acreage report in lieu of Appellant's incorrectly reported acreage, as RMA's Loss Adjustment Manual requires the insurance provider to do so. *See* Loss Adjustment Manual (LAM) Standards Handbook 2009 and Succeeding Crop Years, Part 2, Section 3, Para. 29F, Page 64, and Part 3, Section 3, Paras. 80D(2) and 80F(5), Pages 186 and 188. I therefore conclude that Appellant's argument provides no basis on which to reverse the Hearing Officer's decision.

Based on the foregoing discussion, I uphold the Hearing Officer's Appeal Determination. I conclude that Appellant has not proven by a preponderance of the evidence that the adverse decision was erroneous.

_____
James T. Murray
Deputy Director

_____
May 8, 2012
Date